IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| IN RE STAND 'N SEAL, PRODUCTS LIABILITY LITIGATION | MDL DOCKET NO. 1804 ALL CASES  1:07 MD1804-TWT |

ORDER

This is an MDL proceeding in which a couple of hundred personal injury actions are consolidated for pretrial proceedings. It is before the Court on the Defendant Home Depot U.S.A., Inc.'s Motions for Summary Judgment on Plaintiffs' Claims for Violations of the Consumer Product Safety Act [Docs. 1691-1699]. The Defendants Innovative Chemical Technologies, Inc., Ortec, Inc., and Roanoke Companies Group, Inc. have adopted by reference and joined in the motions. For the reasons stated below, the Defendants' motions are GRANTED.

I. Background

This MDL proceeding arises out of numerous lawsuits filed by users of Stand 'n Seal "Spray-On" Grout Sealer. Stand 'n Seal is a consumer product used to seal tile grout in kitchens, bathrooms, or similar areas. The advantage of Stand 'n Seal is that users can easily stand and spray the sealant onto the grout without the strain of

using a brush and manually applying the sealant. The Plaintiffs say that the problems with Stand 'n Seal began when manufacturers changed its chemical components. Stand 'n Seal was originally manufactured with a fluoropolymer chemical known as Zonyl 225.[1] But from April to May 2005, and again in July 2005, the manufacturer of Stand 'n Seal switched from Zonyl to a different fluoropolymer chemical known as Flexipel S-22WS. The Plaintiffs say that users of Stand 'n Seal immediately began experiencing respiratory problems, such as chemical pneumonitis, from exposure to Stand 'n Seal. By August 31, 2005, Stand 'n Seal with Flexipel was recalled.

As a result of their injuries, consumers all over the country filed lawsuits asserting various claims against each of the companies involved in the manufacture, distribution, and sale of Stand 'n Seal with Flexipel. On January 5, 2007, the Judicial Panel on Multidistrict Litigation transferred the lawsuits to this Court for consolidated pretrial proceedings. Some of the Plaintiffs in this MDL proceeding have asserted claims under the Consumer Product Safety Act. 15 U.S.C. §§ 2051-2089. The Plaintiffs say that the Defendants received complaints from consumers as early as May 13, 2005, and that the Defendants then began contacting physicians and toxicologists

---

[1]Fluoropolymers are known for exceptional chemical resistance and high-temperature stability. The most commonly known fluoropolymer is probably the DuPont brand Teflon. Teflon is used in hundreds of products, including coating of non-stick frying pans.

T:\ORDERS\07\Stand n Seal - MDL Cases\msj-cpsatwt.wpd     2

Case 2:10-cv-00342-JPS   Filed 06/09/09   Page 2 of 9   Document 285

to figure out why Stand 'n Seal was causing respiratory problems. The Plaintiffs say that the Defendants did not notify the Consumer Product Safety Commission of any problems with Stand 'n Seal until over a month later, on June 17, 2005. The Plaintiffs say that the Defendants' failure to immediately notify the Consumer Product Safety Commission violated several provisions of the Consumer Product Safety Act. In response, the Defendants say that, even if the Plaintiffs' allegations are true, the Consumer Product Safety Act does not provide for a private right of action. The Defendants, therefore, move for summary judgment against all claims under the Consumer Product Safety Act.

## II. Summary Judgment Standard

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The court should view the evidence and any inferences that may be drawn in the light most favorable to the non movant. Adickes v. S.H. Kress and Co., 398 U.S. 144, 158-159 (1970). The party seeking summary judgment must first identify grounds that show the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). The burden then shifts to the non-movant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue

of material fact exists.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).

III.  Discussion

Congress passed the Consumer Product Safety Act in 1972 in order to protect the public against unreasonable risks of injury associated with consumer products.  15 U.S.C. § 2051.  The Consumer Product Safety Act established the Consumer Product Safety Commission and gave the Commission significant authority to develop product safety standards, to ban products under certain circumstances, and to pursue recalls of products that present a substantial product hazard.  But, because the Commission can only develop product safety standards, ban products, or pursue recalls if it has sufficient information, the Consumer Product Safety Act also imposed reporting requirements on manufacturers, distributors, and retailers:

> Every manufacturer of a consumer product . . . distributed in commerce, and every distributor and retailer of such product, who obtains information which reasonably supports the conclusion that such product–(1) fails to comply with an applicable consumer product safety rule or with a voluntary consumer product safety standard upon which the Commission has relied under [15 U.S.C. § 2058]; (2) fails to comply with any other rule, regulation, standard, or ban under this chapter or any other Act enforced by the Commission; (3) contains a defect which could create a substantial product hazard described in [15 U.S.C. § 2064(a)(2)]; or (4) creates an unreasonable risk of serious injury or death, shall immediately inform the Commission of such failure to comply, of such defect, or of such risk, unless the manufacturer, distributor, or retailer has actual knowledge that the Commission has been adequately informed of such defect.

15 U.S.C. § 2064(b).  Any person who knowingly violates these reporting

requirements can be subject to Commission imposed civil and criminal penalties. 15 U.S.C. §§ 2069-70.

The Plaintiffs say that the Defendants' failure to immediately notify the Commission of any problems with Stand 'n Seal violated the reporting requirements of the Consumer Product Safety Act. But there is no express private right of action for violations of the Consumer Product Safety Act. In re All Terrain Vehicle Litig., 979 F.2d 755, 757 (9th Cir. 1992). The text itself does not provide for that private right of action. And the express provision of civil and criminal penalties suggests that Congress intended to preclude other types of remedies. Alexander v. Sandoval, 532 U.S. 275, 291 (2001). The Plaintiffs say that a private right of action is necessary to carry out the goals of the Consumer Product Safety Act. But, without evidence of congressional intent, "a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute." Id. at 286-87.

The Plaintiffs say that if the Court concludes that there is no private right of action for violations of the Consumer Product Safety Act, then the Plaintiffs should be allowed to amend their complaints to allege that the Defendants violated rules issued by the Commission. This is relevant because, although there is no private right of action for violations of the Consumer Product Safety Act, there is a private right of

action for violations of rules issued by the Commission:

> Any person who shall sustain injury by reason of any knowing (including willful) <u>violation of</u> a consumer product safety rule, or <u>any other rule or order issued by the Commission may sue</u> any person who knowingly (including willfully) violated any such rule or order . . . , shall recover damages sustained, and may, if the court determines it to be in the interest of justice, recover the costs of suit, including reasonably attorneys' fees . . . and reasonable expert witnesses' fees ....

15 U.S.C. § 2072 (emphasis added). And the Commission has issued rules about the reporting requirements of the Consumer Product Safety Act:

> Every manufacturer, distributor, and retailer of a consumer product distributed in commerce who obtains information which reasonably supports the conclusion that its product creates an unreasonable risk of serious injury or death is required to notify the Commission immediately. 15 U.S.C. § 2064(b)(3). The requirement that notification occur when a responsible party "obtains information which reasonably supports the conclusion that" its product creates an unreasonable risk of serious injury or death is intended to require firms to report even when no final determination of the risk is possible. Firms must carefully analyze the information they obtain to determine whether such information "reasonably supports" a determination that the product creates an unreasonable risk of serious injury or death.

16 C.F.R. § 1115.6. These rules, however, are interpretive; they merely interpret the reporting requirements of the Consumer Product Safety Act:

> The purpose of this Part 1115 is to set forth the [Commission's] interpretation of the reporting requirements imposed on manufacturers (including importers), distributors, and retailers by . . . the Consumer Product Safety Act, as amended [15 U.S.C. § 2064(b)] and to indicate the actions and sanctions which the Commission may require or impose to protect the public from substantial product hazards, as that term is defined in [the Consumer Product Safety Act].

16 C.F.R. § 1115.1.

The Plaintiffs say that the Defendants' failure to immediately notify the Commission of any problems with Stand 'n Seal violated the Commission's rules about the reporting requirements of the Consumer Product Safety Act. But these rules are interpretive, and whether there is a private cause of action for violations of interpretative rules issued by the Commission is a difficult question that courts have disagreed about. The majority of courts have held that there is no private cause of action for violations of these interpretative rules. See Drake v. Honeywell, Inc., 797 F.2d 603, 606 (8th Cir. 1986); Copley v. Heil-Quaker Corp., No. 86-3360, 1987 WL 37429, at *1 (6th Cir. 1987) (unpublished); Zepik v. Tidewater Midwest, Inc., 856 F.2d 936, 942 (7th Cir. 1988); Benitez-Allende v. Alcan Aluminio do Brasil, S.A., 857 F.2d 26, 35 (1st Cir. 1988); Kloepfer v. Honda Motor Co., 898 F.2d 1452, 1457 (10th Cir. 1990). But a sizable minority of courts have held that there is a private cause of action for violation of interpretative rules. See Butcher v. Robertshaw Controls Co., 550 F. Supp. 692, 694 (D. Md. 1981); Young v. Robertshaw Controls Co., 560 F. Supp. 288, 290 (N.D.N.Y. 1983); Berry v. Mega Brands Inc., Civ. A. No. 08-1750, 2009 WL 233508, at *5 (D.N.J. Jan 30, 2009); Swenson v. Emerson Electric Co., 374 N.W.2d 690, 698 (Minn. 1985). The Eleventh Circuit has not addressed this question, and so the Court has carefully reviewed the Consumer Product Safety Act and the

decisions of other courts.  The Court is persuaded that Congress did not intend to create a private cause of action for interpretative rules issued by the Commission.  The Court finds the Eighth Circuit's reasoning in Drake to be persuasive, especially its discussion of the principles of administrative law.  Drake, 797 F.2d at 607 ("Being in nature hortatory, rather than mandatory, interpretive rules never can be violated.").  The court concluded:

> We believe that neither the structure of the Act, its relationship to well-settled principles of administrative law, its legislative history, nor its practical consequences, demonstrates that Congress intended a private cause of action to arise based on an injury resulting from noncompliance with the product hazard reporting rules issued by the Commission.

Id. at 611.  Others agree.  See Zepik v. Tidewater Midwest, Inc., 856 F.2d 936, 942 (7th Cir. 1988).  Therefore, the Defendants are entitled to summary judgment as to all claims under the Consumer Products Safety Act.  The Plaintiffs should not be allowed to amend their complaints to allege that the Defendants violated rules issued by the Commission because such an amendment would be futile.  See Brewer-Giorgio v. Producers Video, Inc., 216 F.3d 1281, 1285 (11th Cir. 2000) (futility is a valid reason for denying motion to amend).  This litigation has been going on for more than two years.  The discovery period has expired.  The request to amend is also untimely.

### IV.  Conclusion

For the reasons stated above, the Defendants' Motions for Summary Judgment

on the Plaintiffs' Claims for Violations of the Consumer Product Safety Act [Docs. 1691-1699] are GRANTED.

SO ORDERED, this 9 day of June, 2009.

/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge

T:\ORDERS\07\Stand n Seal - MDL Cases\msj-cpsatwt.wpd