IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| IN RE STAND 'N SEAL, PRODUCTS LIABILITY LITIGATION | MDL DOCKET NO. 1804 ALL CASES<br><br>1:07 MD1804-TWT |

ORDER

This is an MDL proceeding in which about 200 personal injury actions are consolidated for pretrial proceedings. It is before the Court on the Defendant Roanoke Companies Group, Inc.'s Motion for Summary Judgment on Plaintiffs' Claims for Negligent Recall, Malicious, Wanton, Reckless and Gross Negligence and Punitive Damages [Doc. 1837] and Motion for Summary Judgment on Plaintiffs' Claims of Strict Products Liability, Negligent Design, Failure to Warn, Breach of Warranty and Violation of the Consumer Product Safety Act [Doc. 1838]. For the reasons set forth below, Roanoke's motions are GRANTED IN PART and DENIED IN PART as to the Plaintiffs' claims against Roanoke in Flynn v. Roanoke Companies Group, Inc., No. 1:06-CV-1809, and Adams v. Roanoke Companies Group, Inc., No. 1:07-CV-0686.

I. Background

This MDL proceeding arises out of lawsuits filed by users of Stand 'n Seal "Spray-On" Grout Sealer. Stand 'n Seal is a consumer product used to seal ceramic tile grout in kitchens, bathrooms, and similar areas. The purported advantage of Stand 'n Seal is that users can easily stand and spray the sealant onto the grout without the strain of using a brush and manually applying the sealant. The Plaintiffs say that the problems with Stand 'n Seal began when the manufacturer changed its chemical components. Stand 'n Seal was originally manufactured with a fluoropolymer chemical known as Zonyl 225.[1] But from April to May 2005, and again in July 2005, the manufacturer of Stand 'n Seal switched from Zonyl to a different fluoropolymer chemical known as Flexipel S-22WS. The Plaintiffs say that users of Stand 'n Seal immediately began experiencing respiratory problems, such as chemical pneumonitis, from exposure to Stand 'n Seal. By August 31, 2005, Stand 'n Seal with Flexipel was recalled.

As a result of their injuries, consumers all over the country filed lawsuits asserting various claims against each of the companies involved in the manufacture, distribution, and sale of Stand 'n Seal with Flexipel. On January 5, 2007, the Judicial

---

[1]Fluoropolymers are known for exceptional chemical resistance and high-temperature stability. The most commonly known fluoropolymer is probably the DuPont brand Teflon. Teflon is used in hundreds of products, including coating of non-stick frying pans.

Panel on Multidistrict Litigation transferred the federal lawsuits to this Court for consolidated pretrial proceedings. One of the Defendants in these lawsuits is Roanoke Companies Group, Inc. Pursuant to the "Retail Supply & Distribution Agreement" between Roanoke and SLR, Inc., another Defendant in these lawsuits, Roanoke was the sole wholesale distributor of Stand 'n Seal. SLR agreed to manufacture Stand 'n Seal exclusively for Roanoke, and Roanoke agreed to distribute Stand 'n Seal to major retailers in the United States. (Id.) Roanoke also agreed that it was "solely responsible for the design and content of all labels, markings, warnings and packaging for [Stand 'n Seal]." (Def. Roanoke Companies Group, Inc.'s Statement of Material Undisputed Facts in Supp. of Its Mots. for Summ. J., Ex. 2, at 4.)

The Plaintiffs have asserted claims for strict products liability, negligent design, negligent failure to warn, negligent recall, violations of the Consumer Product Safety Act, and breach of warranty against Roanoke. Roanoke now moves for summary judgment on these claims and the claim for punitive damages. Roanoke says that it is entitled to summary judgment because it did not manufacture Stand 'n Seal with Flexipel, it had no knowledge about the switch from Zonyl to Flexipel, and it fully cooperated with the Consumer Product Safety Commission once it found out there were injuries associated with Stand 'n Seal. Although Roanoke's motion seeks summary judgment in all cases originally filed in Georgia, the parties agree that, at

this point, the Court should only decide Roanoke's motions as to the Plaintiffs' claims in <u>Flynn</u> and <u>Adams</u>. The parties also agree that Georgia law should apply to the Plaintiffs' claims in <u>Flynn</u> and <u>Adams</u>.

## II. Summary Judgment Standard

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The court should view the evidence and any inferences that may be drawn in the light most favorable to the non movant. <u>Adickes v. S.H. Kress and Co.</u>, 398 U.S. 144, 158-159 (1970). The party seeking summary judgment must first identify grounds that show the absence of a genuine issue of material fact. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323-24 (1986). The burden then shifts to the non-movant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact exists. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 257 (1986).

## III. Discussion

### A. Strict Products Liability

Georgia law provides by statute for claims against manufacturers under the theory of strict products liability. The statute provides:

> The manufacturer of any personal property sold as new property directly or through a dealer or any other person shall be liable in tort, irrespective

of privity, to any natural person who may use, consume, or reasonably be affected by the property and who suffers injury to his person or property because the property when sold by the manufacturer was not merchantable and reasonably suited to the use intended, and its condition when sold is the proximate cause of the injury sustained.

O.C.G.A. § 51-1-11. The Plaintiffs assert three types of strict products liability claims: design defect, manufacturing defect, and marketing defect.

Roanoke says that it is not subject to strict liability, because it is not a manufacturer of Stand 'n Seal with Flexipel. "[A] product seller is not a manufacturer as provided in Code Section 51-1-11 and is not liable as such." O.C.G.A. § 51-1-11.1(b). A product seller is defined as:

> [A] person who, in the course of a business conducted for the purpose leases or sells and distributes; installs; prepares; blends; packages; labels; markets; or assembles pursuant to a manufacturer's plan, intention, design, specifications, or formulation; or repairs; maintains; or otherwise is involved in placing a product in the stream of commerce. This definition does not include a manufacturer which, because of certain activities, may additionally be included within all or a portion of the definition of a product seller.

O.C.G.A § 51-1-11.1(a). Based on these statutory provisions, Georgia courts have held that "strict liability applies only to those actively involved in the design, specifications, or formulation of a defective final product or of a defective component part which failed during use of a product and caused injury." Davenport v. Cummins Alabama, Inc., 284 Ga. App. 666, 671 (2007); see also Freeman v. United Cities Propane Gas, Inc., 807 F. Supp. 1533, 1539-40 (M.D. Ga. 1992).

As to the claims based on design and manufacturing defects, there is no evidence that Roanoke is a manufacturer subject to strict liability. The alleged design and manufacturing defect is that Stand 'n Seal contained aerosolized Flexipel, which is allegedly toxic. (Adams Compl. ¶¶ 4.3, 4.5.)[2] But Roanoke was not actively involved in the design of Stand 'n Seal as an aerosol spray or in the decision to use Flexipel. SLR, on its own, developed the formula and specifications for Stand 'n Seal and decided to use Flexipel instead of Zonyl. (Starcevich Dep. at 125, 130; Def. Roanoke Companies Group, Inc.'s Statement of Material Undisputed Facts in Supp. of Its Mots. for Summ. J., Ex. 5.) Roanoke "did not have access to the SLR formula [because it] was proprietary." (Tripodi Dep. at 109.) And Roanoke "depended on [SLR], who was experienced in aerosol sales and distribution, and . . . [SLR's] contract packer, who had knowledge of aerosols." (Id. at 125.)

The Plaintiffs say that there is evidence that, after receiving reports of injuries in May and June 2005, Roanoke told SLR to add n-butyl acetate to Stand 'n Seal and continue production. (Spencer Dep. at 52-53, 60-61.) N-butyl acetate is a chemical solvent that was part of the mixture for Stand 'n Seal with Zonyl, but not for Stand 'n Seal with Flexipel. N-butyl acetate gave Stand 'n Seal with Zonyl a harsh smell, and

---

[2] For a discussion of the toxicity of aerosolized Flexipel, see the Court's order on the Defendants' Motion for Summary Judgment on the Issue of General Causation. [Doc. 2290].

the theory among Roanoke, SLR, and others was that the harsh smell prevented overexposure. (Tripodi Dep., Ex. 28.) Roanoke, therefore, told SLR to add n-butyl acetate back to Stand 'n Seal. (Spencer Dep. at 52-53, 60-61.)[3] But the problem with this evidence is that the Plaintiffs do not allege that the addition of n-butyl acetate made Stand 'n Seal defective or that n-butyl acetate is the cause of their injuries. The alleged design and manufacturing defect is that Stand 'n Seal contained aerosolized Flexipel. This evidence does not show that Roanoke was responsible for that defect. Therefore, Roanoke is entitled to summary judgment on the strict liability claims based on design and manufacturing defects in Flynn and Adams.

I am not persuaded that Georgia law allows a claim for strict liability against a non-manufacturer for "marketing defects." The statutory exception to strict liability for mere sellers explicitly applies to those who package, label, or market the product. In Boyce v. Gregory Poole Equip. Co., 269 Ga. App. 891, 898 (2004), the Georgia Court of Appeals said that "adequate warnings as to the proper or safe use of a product are part of the total design package of the product." However, this was in the context of the discussion of the negligence claim and not the strict liability claim. The

---

[3] By June 2005, it appears that Roanoke knew that SLR was using a different formula for Stand 'n Seal, and that this different formula did not include n-butyl acetate. It is, however, unclear whether Roanoke also knew that SLR was using Flexipel instead of Zonyl. Roanoke says it didn't; the Plaintiffs say it did.

Plaintiffs have not cited any authority to support their novel theory of strict liability for marketing defects. Therefore, the Defendant is entitled to summary judgment as to this claim in its entirety.

B.  Negligent Design

Georgia courts have described negligent design claims as whether a manufacturer of a product "has used reasonable care and skill in designing it so that it is reasonably safe for the purposes for which it is intended, and for other uses which are foreseeably probable." Hall v. Scott U.S.A, Ltd., 198 Ga. App. 197, 201 (1990) (internal quotation marks omitted). The Plaintiffs' negligent design claims allege that Stand 'n Seal with Flexipel was unreasonably dangerous because it aerosolized Flexipel, which is allegedly toxic. (Adams Compl. ¶ 6.4.)

Roanoke says that, because it is not a manufacturer of Stand 'n Seal with Flexipel, it is not liable for negligent design. Negligence claims, however, are governed by Georgia common law, and the definition of a manufacturer under Georgia common law is different from the strict liability statute. See Powell v. Harsco Corp., 209 Ga. App. 348, 349 (1993). Under Georgia common law, the definition of a manufacturer includes ostensible manufacturers. "One who puts out as his own product a chattel manufactured by another is subject to the same liability as though he were its manufacturer." Restatement (Second) of Torts § 400 (adopted by Pepper v.

Selig Chem. Indus., 161 Ga. App. 548, 550 (1982)). The Restatement (Second) of Torts provides a helpful illustration:

> A puts out under his own name a floor stain which is manufactured under a secret formula by B, to whom A entrusts the selection of the formula. The stain made under this formula is inflammable, as a competent maker of such articles would have known. Of this both A and B are ignorant, and neither the advertisements nor the directions contain any warning against using it near unguarded lights. C purchases from a retail dealer a supply of this stain and while D, C's wife, is applying it to the floor of the kitchen, C strikes a match to light the gas. An explosion follows, causing harm to D and to E, a friend who is watching D stain the floor. A is subject to liability to D and E.

Restatement (Second) of Torts § 400 illus. 1.

There is evidence that Roanoke is an ostensible manufacturer of Stand 'n Seal with Flexipel. Roanoke's brand name was on cans of Stand 'n Seal, while SLR's name was not. (Def. Roanoke Companies Group, Inc.'s Statement of Material Undisputed Facts in Supp. of Its Mots. for Summ. J., Ex. 9, at 2; Spencer Dep. at 149-50.) This is consistent with the Agreement between Roanoke and SLR, under which Roanoke was responsible for the warnings, instructions, and labels for Stand 'n Seal. (Spencer Dep. at 134.) Roanoke was also listed as the manufacturer in the Material Safety Data Sheets for Stand 'n Seal. (Def. Roanoke Companies Group, Inc.'s Statement of Material Undisputed Facts in Supp. of Its Mots. for Summ. J., Ex. 19, at 2.)

In response, Roanoke says that the strict liability statute abolished the concept

T:\ORDERS\07\Stand n Seal - MDL Cases\msj-roanoketwt.wpd    9

Case 2:10-cv-00342-JPS   Filed 07/15/09   Page 9 of 20   Document 289

of an ostensible manufacturer. See O.C.G.A. § 51-1-11.1; Alltrade, Inc. v. McDonald, 213 Ga. App. 759-60 (1994). But nothing in the text of the strict liability statute indicates that it also applies to negligence claims. And at least one Georgia court has held that it does not. See Powell, 209 Ga. App. at 349. Other jurisdictions with similar strict liability statutes have reached the same conclusion. See Warzynski v. Empire Comfort Sys., Inc., 102 N.C. App. 222, 227 (1991) ("Section 400 [of the Restatement (Second) of Torts] is not a form of strict liability . . . ."); Kennedy v. Guess, Inc., 806 N.E.2d 776, 783 (Ind. 2004) ("[Section] 400 of the Restatement (Second) of Torts applies only to the [plaintiffs'] negligence claim and not to their strict liability claim."). Therefore, Roanoke is not entitled to summary judgment on the negligent design claims in Flynn and Adams.

    C.    Negligent Failure to Warn

"To establish a claim for failure to warn, the plaintiff must show the defendant had a duty to warn, the defendant breached that duty and the breach was the proximate cause of the plaintiff's injury. The duty to warn an end user of a risk associated with product use arises when the manufacturer knows or reasonably should know of a danger arising from product use." Wheat v. Sofamor, S.N.C., 46 F. Supp. 2d 1351, 1363-64 (N.D. Ga. 1999) (citations omitted). The Plaintiffs' negligent failure to warn claims allege that Stand 'n Seal did not contain warnings that exposure could cause

severe injuries, provide instructions that users should wear respirator masks or use adequate ventilation, and list the contents on the cans. (Adams Compl. ¶ 4.10.)

Roanoke says that it did not know about any dangers associated with Stand 'n Seal with Flexipel because it was not aware that SLR had switched from Zonyl to Flexipel. But there is evidence that Roanoke should have known about the dangers associated with Stand 'n Seal with Flexipel. See Colonial Stores, Inc. v. Donovan, 115 Ga. App. 330, 331 (1967) ("Constructive knowledge of a defect, i.e., that the defendant ought to have known of the defect in the exercise of ordinary care, is sufficient to charge the defendant with liability for injuries caused by the defect."). Carol Pollack-Nelson and Roger Wabeke, two of the Plaintiffs' expert witnesses, have said that a reasonably prudent company would have conducted an independent hazard analysis of Stand 'n Seal with Flexipel before designing the warnings and instructions and distributing it for public use, and that a hazard analysis would have identified the risk of severe injuries. (Wabeke Aff., Ex. B; Pollack-Nelson Aff. ¶ 4, Ex. A.) Pollack-Nelson has also said that a reasonably prudent company would have had "a plan in place for periodic systematic testing of its products in order to maintain control over [suppliers]." (Pollack-Nelson Aff. ¶ 12.) Roanoke failed to conduct an independent hazard analysis and have a plan in place for periodic systematic testing. (Id. ¶¶ 7-8, 12.)

It is true that the general rule is that a distributor can rely on manufacturer's assurances of quality. As Georgia courts have explained:

> [A] vendor or dealer who is not the manufacturer is under no obligation to test an article purchased and sold by him for the purpose of discovering latent or concealed defects, but that when he purchases and sells an article in common and general use, in the usual course of trade, without knowledge of its dangerous quality, and with nothing tending reasonably to call to his attention thereto, he is not negligent in failing to exercise care to determine whether it is dangerous or not. In such a case he may assume that the manufacturer has done his duty in properly constructing the article and in not placing upon the market a commodity which is defective and likely to inflict injury.

Sirmons v. Derst Baking Co., 221 Ga. App. 127, 128 (1996) (internal quotation marks omitted). But there is evidence that this general rule should not apply to Roanoke. Roanoke distributed Stand 'n Seal with Flexipel as its own product, and so Roanoke "is subject to the same liability as though [it] were its manufacturer." Restatement (Second) of Torts § 400. Roanoke, not SLR, accepted ultimate responsibility for the warnings, instructions, and labels for Stand 'n Seal. (Spencer Dep. at 134, 149-50.) And Roanoke had received a pattern of complaints about injuries associated with Stand 'n Seal by May 23, 2005, which is before any of the Plaintiffs in Flynn or Adams purchased cans of Stand 'n Seal with Flexipel. "[C]onsumer complaints about a product can create a jury issue as to whether a distributor or seller should have reasonably known of a danger." Parks v. Hyundai Motor Am., Inc., 258 Ga. App. 876, 878 (2002).

Roanoke also says that its alleged failure to warn about the dangers of Stand 'n Seal with Flexipel was not a proximate cause of the Plaintiffs' injuries. But there is evidence that it was. Pollack-Nelson has said that "[i]f consumers had been adequately warned of the risk of inhalation injuries, more likely than not some of these injuries would have been prevented because consumers might have decided not to use the products at all or might have used the product in a different way that did not result in inhalation of the product." (Pollack-Nelson Aff. ¶ 11.)

Roanoke also says that any Plaintiffs that did not read the warnings for Stand 'n Seal with Flexipel cannot proceed with a negligent failure to warn claim. Roanoke says that Paul Mathis and Shaun Hart, two Plaintiffs in the Adams cases, testified that they could not remember whether they read the warnings. But that is not the same as saying they did not read the warnings. See Sheckells v. AGV-USA Corp., 987 F.2d 1532, 1536 (11th Cir. 1993) ("[The plaintiff] did not testify that he did not read the warnings, only that he did not remember doing so."). For example, when asked whether he read the warnings, Paul Mathis said that "I probably did, but I really don't specifically remember" and "I believe I did, but I can't say that I did for sure." (Mathis Dep. at 32.) These statements demonstrate that there is a genuine issue of material fact. "[I]ssues of causation are for the jury to resolve and should not be determined by a trial court as a matter of law except in plain and undisputed cases."

See Ogletree v. Navistar Int'l Transp. Corp., 245 Ga. App. 1, 3 (2000).

Even if Paul Mathis and Shaun Hart did not read the warnings for Stand 'n Seal with Flexipel, they still could proceed with a negligent failure to warn claim. "[F]ailure to read a warning does not bar recovery when the plaintiff is challenging the adequacy of the efforts of the manufacturer or seller to communicate the danger the dangers of the product to the buyer or user." Wilson Foods Corp. v. Turner, 218 Ga. App. 74, 75 (1995) (internal quotation marks omitted). The Plaintiffs say that Roanoke's efforts to communicate the dangers of Stand 'n Seal with Flexipel were inadequate for several reasons:

> There was no hazard alert symbol or signal word to notify the user that it was a warning. The text of the inhalation warning was presented in a relatively small font and was buried in other text. Furthermore, the inhalation warning was eclipsed by other information on the can that was highlighted (i.e., bolded). The inhalation warning did not adequately inform users of the risk and how to avoid it. Further other messages on the can's label actually detracted from the explanation of the hazard and by suggesting that the contents of the product were harmless and not harsh.

(Pollack-Nelson Aff. ¶ 9.) Moreover, "failure to read the warning may [also] be circumstantial evidence of the inadequacy of the warning." Wilson Foods, 218 Ga. App. at 75 (internal quotation marks omitted). Therefore, Roanoke is not entitled to summary judgment on the negligent failure to warn claims in Flynn and Adams.

    D.    Negligent Recall

There are two types of negligent recall claims. One is a negligent failure to initiate a recall. See Mack Trucks, Inc., v. Conkle, 263 Ga. 539, 540-41 (1993) ("[Defendant] is liable on the basis of its 'negligent failure to recall or warn," . . . a negligence theory of product liability which is recognized under O.C.G.A. § 51-1-11(c)."). The other is negligence in the execution of a recall. See Blossman Gas Co. v. Williams, 189 Ga. App. 195, 197 (1988) ("The law imposes an obligation upon everyone who attempts to do anything, even gratuitously, for another, to exercise some degree of care and skill in the performance of what he has undertaken, for nonperformance of which an action lies."). The Plaintiffs assert both types of negligent recall claims.

Roanoke says that, because it is not a manufacturer of Stand 'n Seal with Flexipel, it is not liable for negligent failure to initiate a recall. See Blossman Gas, 189 Ga. App at 198 ("[T]he dealer is not obligated to conduct the recall program . . . ."). But, as discussed above, there is evidence that Roanoke distributed Stand 'n Seal with Flexipel as its own product, and so Roanoke "is subject to the same liability as though [it] were its manufacturer." Restatement (Second) of Torts § 400. Of course, Roanoke did ultimately initiate a product recall. But Catherine Downs, one of the Plaintiffs' expert witnesses, has said that a reasonably prudent company would have initiated the recall earlier than Roanoke did. (Downs Aff. ¶¶ 18-19, 22.)

Roanoke also says that there is no evidence that it was negligent in performing the recall of Stand 'n Seal with Flexipel. In particular, Roanoke relies on the fact that the Consumer Product Safety Commission approved its recall plan. But that fact does not itself establish that Roanoke's recall plan was reasonable. "Compliance with consumer product safety rules or other rules or orders under this chapter shall not relieve any person from liability at common law or under State statutory law to any other person." 15 U.S.C. § 2074(a). Indeed, Downs has said that prudent manufacturers "exercising a reasonable standard of care recognize that complying with . . . the directives of the [Commission] are minimum standards and they often need to do more than this minimum to effectively protect the consumers and the public." (Downs Aff. ¶ 6.) Downs identified numerous problems with the execution of the recall, including that Roanoke based its recall plan on an inadequate investigation into the cause of the injuries, did not have enough personnel executing the recall plan, and did not have pre-existing recall policies in place. (Id. ¶¶ 8, 12-13.) Therefore, Roanoke is not entitled to summary judgment on the negligent recall claims in Flynn and Adams.

E. Consumer Product Safety Act

The Consumer Product Safety Act imposes certain requirements on manufacturers, distributors, and retailers of consumer products to report problems to

the Consumer Product Safety Commission. 15 U.S.C. § 2064(b). The Plaintiffs say that Roanoke's failure to immediately notify the Commission of the injuries associated Stand 'n Seal with Flexipel violated these reporting requirements. But, as discussed in another order by the Court, there is no private right of action for violations of the Consumer Product Safety Act. [Doc. 2288]. Therefore, Roanoke is entitled to summary judgment on the Consumer Product Safety Act claims in <u>Flynn</u> and <u>Adams</u>.

      F.    <u>Breach of Warranty</u>

"Georgia law establishes that in order to recover under a theory of breach of implied warranty of merchantability, a plaintiff must have privity with the seller." <u>Keaton v. A.B.C. Drug Co.</u>, 266 Ga. 385, 386 (1996). Because the Plaintiffs did not purchase Stand 'n Seal directly from Roanoke, the "Plaintiffs concede they do not have privity with Roanoke for their breach of warranty claims." (Pls.' Response to Def. Roanoke Companies Group, Inc.'s Mot. for Summ. J. on Pls.' Claims of Strict Products Liability, Negligent Design, Failure to Warn, Breach of Warranty and Violation of the Consumer Product Safety Act, at 22.)[4] Therefore, Roanoke is entitled to summary judgment on the breach of warranty claims in <u>Flynn</u> and <u>Adams</u>.

      G.    <u>Punitive Damages</u>

"Punitive damages may be awarded only in such tort actions in which it is

---

[4]The Plaintiffs purchased Stand 'n Seal with Flexipel from The Home Depot, U.S.A., Inc., another Defendant in these lawsuits.

proven by clear and convincing evidence that the defendant's actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences." O.C.G.A. § 51-12-5.1(b). This means that "[s]omething more than the mere commission of a tort is always required for punitive damages." Banks v. ICI Ams., Inc., 266 Ga. 607, 610 (1996) (internal quotation marks omitted). The Plaintiffs say that punitive damages are appropriate because Roanoke "knew its products were causing injuries, yet made the conscious decision to delay the removal of the products from the shelves." (Pls.' Resp. to Def. Roanoke Companies, Inc.'s Mot. for Summ. J. on Pls.' Claims for Negligent Recall, Malicious, Wanton, Reckless, and Gross Negligence and Punitive Damages, at 17.)

The evidence in this case does not support an award of punitive damages against Roanoke. From November 2003 to April 2005, over one million cans of Stand 'n Seal were sold with almost no complaints. (Def. Roanoke Companies Group, Inc.'s Statement of Material Undisputed Facts in Supp. of Its Mots. for Summ. J. ¶ 17.) Then, in May 2005, Roanoke began receiving complaints of respiratory injuries associated with Stand 'n Seal. (Id., Exs. 15-17.) Faced with these complaints, Roanoke began an investigation into the cause of the injuries. Throughout its investigation, Roanoke took steps to determine the cause of the injuries and to prevent

future injuries from occurring. Although there is some evidence that Roanoke's efforts were below the standard of ordinary care, that does not mean that Roanoke was consciously indifferent to the risk of injuries. For example, Roanoke believed that misuse of and overexposure to Stand 'n Seal was the cause of the injuries. And so Roanoke "hoped that if it was the case, as SLR asserted, that the people weren't using [Stand 'n Seal] properly, that updating the label, improving the warnings would improve the application of the product." (Kascak Dep. at 78-79.) It now appears that misuse and overexposure was not the cause of the injuries, but Roanoke's efforts show that it was not consciously indifferent to the risk of injuries.

As another example, after continuing to receive complaints of injuries, Roanoke contacted the Consumer Product Safety Commission and reported the injuries associated with Stand 'n Seal. (Def. Roanoke Companies Group, Inc.'s Statement of Material Undisputed Facts in Supp. of Its Mots. for Summ. J. ¶ 41.) Roanoke followed up with a more comprehensive report and also submitted a recall plan to the Commission. (Id. ¶ 61.) The Commission approved Roanoke's recall plan. (Id. ¶ 70.) And, after an investigation to determine whether Roanoke had complied with the Consumer Product Safety Act, the Commission decided not to pursue any civil or criminal penalties against Roanoke. (Id. ¶ 73.) It now appears that Roanoke's recall plan may have been inadequate. But, again, Roanoke's efforts show that it was not

consciously indifferent to the risk of injuries. See Stone Man, Inc. v. Green, 263 Ga. 470, 472 (1993) ("[C]ompliance with county, state, and federal regulations is not the type of behavior which supports an award of punitive damages; indeed, punitive damages . . . are, as a general rule, improper where a defendant has adhered to environmental and safety regulations."). Therefore, applying Georgia law, Roanoke is entitled to summary judgment on the claim for punitive damages in Adams and Flynn.

## IV. Conclusion

For the reasons set forth above, Roanoke's Motion for Summary Judgment on Plaintiffs' Claims for Negligent Recall, Malicious, Wanton, Reckless and Gross Negligence and Punitive Damages [Doc. 1837] and Motion for Summary Judgment on Plaintiffs' Claims of Strict Products Liability, Negligent Design, Failure to Warn, Breach of Warranty and Violation of the Consumer Product Safety Act [Doc. 1838] are GRANTED IN PART and DENIED IN PART as to the Plaintiffs' claims against Roanoke in Flynn and Adams.

SO ORDERED, this 14 day of July, 2009.

/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge

T:\ORDERS\07\Stand n Seal - MDL Cases\msj-roanoketwt.wpd          20

Case 2:10-cv-00342-JPS   Filed 07/15/09   Page 20 of 20   Document 289