IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| IN RE STAND 'N SEAL, PRODUCTS LIABILITY LITIGATION | MDL DOCKET NO. 1804<br>ALL CASES<br><br>1:07 MD1804-TWT |

ORDER

This is an MDL proceeding in which about 200 personal injury cases are consolidated for pretrial proceedings. It is before the Court on the Motion of Aerofil Technology, Inc., for Summary Judgment [MDL Doc. 1525; <u>Bell</u> Doc. 176; <u>Dzebic</u> Doc. 37; <u>Osmanik</u> Doc. 38]. For the reasons set forth below, Aerofil's Motion is granted in part and denied in part.

I. <u>Background</u>

This MDL proceeding arises out of cases filed by users of Stand 'n Seal "Spray-On" Grout Sealer. Stand 'n Seal is a consumer product used to seal ceramic tile grout in kitchens, bathrooms, and similar areas. The purported advantage of Stand 'n Seal is that users can easily stand and spray the sealant onto the grout without the strain of using a brush and manually applying the sealant. The Plaintiffs say that the problems with Stand 'n Seal began when SLR, Inc., a manufacturer of Stand 'n Seal, changed

its chemical components. Stand 'n Seal was originally manufactured with a fluoropolymer chemical known as Zonyl 225.[1] But from April to May 2005, and again in July 2005, SLR switched from Zonyl to a different fluoropolymer chemical known as Flexipel S-22WS. The Plaintiffs say that users of Stand 'n Seal immediately began experiencing respiratory problems, such as chemical pneumonitis, from exposure to Stand 'n Seal. Because of these problems, Stand 'n Seal with Flexipel was ultimately recalled.

As a result of their injuries, consumers all over the country filed cases asserting various claims against each of the companies involved in the manufacture, distribution, and sale of Stand 'n Seal with Flexipel. On January 5, 2007, the Judicial Panel on Multidistrict Litigation transferred the federal cases to this Court for consolidated pretrial proceedings. One of the Defendants in these cases is Aerofil Technology, Inc. Aerofil describes itself as a contract manufacturer that packages the products of other companies. In late 2002 or early 2003, SLR hired Aerofil to package Stand 'n Seal into aerosol spray cans. SLR provided Aerofil with the design, specifications, and formulation for packaging Stand 'n Seal. SLR also provided for

---

[1] Fluoropolymers are known for exceptional chemical resistance and high-temperature stability. The most commonly known fluoropolymer is probably the DuPont brand Teflon. Teflon is used in hundreds of products, including coating of non-stick frying pans.

empty, pre-labeled cans and its chemical mixture, which included either Zonyl or Flexipel, to be shipped directly from its suppliers to Aerofil. Aerofil, however, itself chose the propellant and valve necessary to make the aerosol spray can work properly. Aerofil purchased those and other materials from its own suppliers, and then added those expenses to the total price charged to SLR.

The Plaintiffs have asserted claims for strict products liability, negligent design, negligent recall, violations of the Consumer Product Safety Act, breach of warranty, and punitive damages against Aerofil. Aerofil now moves for summary judgment on these claims. Aerofil says that it is entitled to summary judgment because it did not design Stand 'n Seal and it followed SLR's specifications without any mistakes. Aerofil requests summary judgment in all cases originally filed in Georgia. In a previous order, this Court held that Georgia law applies to the Plaintiffs' state law claims in these cases. [MDL Doc. 2434].

## II. Summary Judgment Standard

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The court should view the evidence and any inferences that may be drawn in the light most favorable to the non movant. Adickes v. S.H. Kress and Co., 398 U.S. 144, 158-

159 (1970). The party seeking summary judgment must first identify grounds that show the absence of a genuine issue of material fact. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323-24 (1986). The burden then shifts to the non-movant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact exists. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 257 (1986).

### III. <u>Discussion</u>

#### A. <u>Strict Products Liability</u>

Georgia law provides by statute for claims against manufacturers under the theory of strict products liability. The statute provides:

> The manufacturer of any personal property sold as new property directly or through a dealer or any other person shall be liable in tort, irrespective of privity, to any natural person who may use, consume, or reasonably be affected by the property and who suffers injury to his person or property because the property when sold by the manufacturer was not merchantable and reasonably suited to the use intended, and its condition when sold is the proximate cause of the injury sustained.

O.C.G.A. § 51-1-11. But "a product seller is not a manufacturer as provided in Code Section 51-1-11 and is not liable as such." O.C.G.A. § 51-1-11.1(b). A product seller is defined as:

> [A] person who, in the course of a business conducted for the purpose leases or sells and distributes; installs; prepares; blends; packages; labels; markets; or assembles pursuant to a manufacturer's plan, intention, design, specifications, or formulation; or repairs; maintains; or otherwise is involved in placing a product in the stream of commerce. This definition does not include a manufacturer which, because of certain

activities, may additionally be included within all or a portion of the definition of a product seller.

O.C.G.A § 51-1-11.1(a). Based on these statutory provisions, Georgia courts have held that "strict liability applies only to those actively involved in the design, specifications, or formulation of a defective final product or of a defective component part which failed during use of a product and caused injury." Davenport v. Cummins Alabama, Inc., 284 Ga. App. 666, 671 (2007); see also Boyce v. Gregory Poole Equip. Co., 269 Ga. App. 891 (2004).

The evidence shows that Aerofil is a "product seller" of Stand 'n Seal, not a manufacturer. Although Aerofil packaged Stand 'n Seal into aerosol spray cans, it was not actively involved in the design, specifications, or formulation of Stand 'n Seal. SLR provided Aerofil with the specifications, and Aerofil's job was to package Stand 'n Seal according to those specifications. As Gene Ivnik, the President of Aerofil, explained in his deposition:

> Q. . . . Did Aerofil ask SLR what was in their premix?
> A. No, not to my knowledge.
> Q. Why not?
> A. Okay.
>      . . . .
> A. . . . Because again, the role of the packager, or contract packager, whether it's Aerofil or someone else, is to – is to put the package together to the specs – to the specifications. So, when – it is not – it is not abnormal for a customer to supply to a packager a specific ingredient that is specifically theirs, and they say, "Put X amount of this ingredient with the other chemicals with it." And that's the role of the packager.

(Ivnik Dep. at 65.)  Indeed, only SLR had the ability to change the specifications for Stand 'n Seal.  (Spencer Dep. at 130-31.)

The Plaintiffs say that Aerofil is a manufacturer because Aerofil chose the propellant and valve necessary to make the aerosol spray can work properly.  As Lee Starcevich, a corporate representative for SLR, explained in his deposition:

> Q. . . . Is there any particular name for the propellant?
> A. I believe it was A-46, but that was determined by Aerofil when they did a test on the product to make sure that the seals and the valve and everything are correct for the liquid that's going in it.  That was – that was done by Aerofil.
> Q. Okay.  So Aerofil made a determination of exactly which propellant needed to be used for –
> A. Yes.
> Q. – the product?
> Okay.  Did Aerofil make any other determinations regarding the design of the product besides what we just talked about?
>          . . . .
> Q. No.

(Starcevich Dep. at 28-29.)  But the Plaintiffs do not allege that Aerofil's choice of propellant or valve caused any defect or injury.  The alleged defect is that Stand 'n Seal with Flexipel created toxic, respirable size particles when applied using an aerosol spray can.  (Wabeke Dep. at 55); (Alender Dep. at 56.)  SLR, not Aerofil, made the decision that Stand 'n Seal with Flexipel should be applied using an aerosol spray can.  (Starcevich Dep. at 28-29.)  Aerofil simply chose the propellant and valve that would implement SLR's design.  See Davenport, 284 Ga. App. at 672.  Therefore,

T:\ORDERS\07\Stand n Seal - MDL Cases\msj-aerofiltwt.wpd          6

Case 2:10-cv-00342-JPS   Filed 09/28/09   Page 6 of 11   Document 316

Aerofil is entitled to summary judgment on the Plaintiffs' strict products liability claims.

    B.    Negligent Design

The Plaintiffs contend that Aerofil was negligent aerosolizing Flexipel in violation of the MSDS. The Defendant claims that the MSDS warning applies only to Flexipel in its undiluted form. Georgia law incorporates a broad standard of negligence. Georgia follows the Restatement standard in defining negligence as "conduct which falls below the standard established by law for the protection of others against unreasonable risk of harm." Bradley Center, Inc. v. Wessner, 250 Ga. 199, 201 (1982). "The most common test of negligence is whether the consequences of the alleged wrongful act are reasonably to be foreseen as injurious to others coming within the range of such acts." Underwood v. Select Tire, Inc., 296 Ga. App. 805, 809 (2009). In this case, there are genuine issues of fact as to whether Aerofil violated the "Do not aerosolize" warning in the MSDS, and whether such a violation exposed users of the product to an unreasonable risk of injury. Therefore, Aerofil is not entitled to summary judgement on the Plaintiffs' negligence and punitive damages claims.

    C.    Negligent Recall

Georgia law provides for two types of negligent recall claims. One type is a negligent failure to <u>initiate</u> a recall. See <u>Mack Trucks, Inc., v. Conkle</u>, 263 Ga. 539, 540-41 (1993) ("[Defendant] is liable on the basis of its 'negligent failure to recall or warn,'... a negligence theory of product liability which is recognized under O.C.G.A. § 51-1-11(c)."). The other type is negligence in the <u>execution</u> of a recall. See <u>Blossman Gas Co. v. Williams</u>, 189 Ga. App. 195, 197 (1988) ("The law imposes an obligation upon everyone who attempts to do anything, even gratuitously, for another, to exercise some degree of care and skill in the performance of what he has undertaken, for nonperformance of which an action lies.").

The Plaintiffs assert only the second type of negligent recall claim against Aerofil. On June 23, 2005, Roanoke Companies Group, Inc., a distributor of Stand 'n Seal, asked SLR and Aerofil to provide batch numbers for cans of Stand 'n Seal manufactured with "the alternate raw material in April [and] May." (Ivnik Dep., Ex. 227.) Aerofil responded the next day with a list of batch numbers. (<u>Id.</u>) On July 13, 2005, Roanoke told SLR and Aerofil that it was "seriously considering a recall" and that it was "concerned about the accuracy and completeness" of the batch numbers provided by Aerofil on June 23. (Ivnik Dep., Ex. 226.) On July 15, 2005, Roanoke began the recall of Stand 'n Seal with Flexipel. (Ivnik Dep., Ex. 228) But, on July 18, 2005, Aerofil realized that it overlooked three additional batch numbers and sent

those batch numbers to Roanoke. (Id.) Because Roanoke continued to be concerned about the accuracy and completeness of the batch numbers provided by Aerofil, Roanoke did a complete recall. (Id.) Based on these facts, the Plaintiffs say that Aerofil is liable for negligence in the execution of a recall.

The evidence fails to show breach and causation for the Plaintiffs' negligent recall claims. Although Aerofil failed to initially identify certain batch numbers, the Plaintiffs do not provide evidence that this failure was the result of unreasonable conduct by Aerofil. Catherine Downs, the Plaintiffs' expert on product recalls, did not have any criticism of Aerofil in her expert report. (Downs Dep. at 333-34.) Indeed, the only evidence on this issue is from Gene Ivnik, the President of Aerofil, who said in his deposition that Aerofil "provided the batch numbers in a very responsive time to Roanoke and SLR, the totality of it." (Ivnik Dep. at 105.)

The Plaintiffs also do not provide evidence that Aerofil's failure to initially identify certain batch numbers had a negative effect on the recall. See Blossman, 189 Ga. App. at 198. On July 15, 2005, Roanoke began the recall of Stand 'n Seal with Flexipel. Three days later, on July 18, 2005, Aerofil realized that it overlooked three additional batch numbers and sent those batch numbers to Roanoke. The Plaintiffs do not identify any injuries that would have been prevented if Roanoke had had those additional batch numbers on July 15, instead of three days later on July 18. Moreover,

Roanoke's concern about the batch numbers provided by Aerofil actually prompted a more complete recall. As Rich Tripodi, the President of Roanoke, explained in his deposition:

> A. We felt that we did not have a complete list of the batch numbers at this time. And the result of that was instead of doing a partial recall, we did a total recall.
> Q. So that you could try to work backwards. Better to pull some good product off the market than to mistakenly leave defective product on the market?
> A. By this time, we were concerned about the accuracy of our information.

(Tripodi Dep. at 207.)[2] Therefore, Aerofil is entitled to summary judgment on the Plaintiffs' negligent recall claims.

D. <u>Consumer Product Safety Act</u>

The Consumer Product Safety Act imposes certain requirements on manufacturers, distributors, and retailers of consumer products to report problems to the Consumer Product Safety Commission. 15 U.S.C. § 2064(b). The Plaintiffs say that Aerofil's failure to immediately notify the Commission of the injuries associated Stand 'n Seal with Flexipel violated these reporting requirements. But, as discussed in a previous order by the Court, there is no private right of action for violations of the

---

[2]Whether Roanoke itself is liable to the Plaintiffs for negligent recall claims is a separate question. [MDL Doc. 2307].

Consumer Product Safety Act. [MDL Doc. 2288]. Therefore, Aerofil is entitled to summary judgment on the Plaintiffs' Consumer Product Safety Act claims.

    E.    <u>Breach of Warranty</u>

Georgia law provides that, in order to recover under a claim for breach of warranty, a plaintiff must have privity with the seller. <u>See</u> O.C.G.A. § 11-2-318; <u>Keaton v. A.B.C. Drug Co.</u>, 266 Ga. 385, 386 (1996). Because the Plaintiffs did not purchase Stand 'n Seal directly from Aerofil, the Plaintiffs concede that they do not have any breach of warranty claims against Aerofil. Therefore, Aerofil is entitled to summary judgment on the Plaintiffs' breach of warranty claims.

### IV. Conclusion

For the reasons set forth above, the Motion of Aerofil Technology, Inc., for Summary Judgment [MDL Doc. 1525; <u>Bell</u> Doc. 176; <u>Dzebic</u> Doc. 37; <u>Osmanik</u> Doc. 38] is GRANTED in part and DENIED in part.

SO ORDERED, this 28 day of September, 2009.

    /s/Thomas W. Thrash
    THOMAS W. THRASH, JR.
    United States District Judge

T:\ORDERS\07\Stand n Seal - MDL Cases\msj-aerofiltwt.wpd

Case 2:10-cv-00342-JPS   Filed 09/28/09   Page 11 of 11   Document 316